IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CYNTHIA L. FOULKE, <br><br> *Plaintiff,* <br><br> v. <br><br> VIRGINIA STATE POLICE, ET AL., <br><br> *Defendants.* | CIVIL ACTION NO. 6:12-CV-00006 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

The *pro se* Plaintiff[1] filed a second amended complaint[2] under 42 U.S.C. § 1983 alleging that her rights to due process were violated when her car was towed and stored without pre-seizure notice or a post-seizure hearing. Defendants[3] have filed a motion to dismiss, which has been fully briefed and heard. For the reasons stated herein, the motion to dismiss will be granted for failure to state a claim upon which relief can be granted.

### I. STANDARD OF REVIEW

When considering a motion to dismiss for failure to state a claim upon which relief can

---

[1] Although the Plaintiff is a *pro se* litigant in this case, she is apparently an active member of the Virginia State Bar.

[2] I previously granted Defendants' motion to dismiss for lack of subject matter jurisdiction, and the Virginia State Police and the Commonwealth of Virginia were dismissed as Defendants in this matter. Because Plaintiff had filed an amended complaint, and summonses had been issued to a number of newly added Defendants, the complaint was not stricken from the court's active docket. Thereafter, Plaintiff was granted leave to file a second amended complaint (to which I will refer hereinafter as the "complaint"), and Defendants moved to dismiss pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

[3] Plaintiff names the following as Defendants: "Marla G. Decker, in her official capacity as the Secretary of Public Safety"; "Janet Polarek, in her official capacity as Secretary of the Commonwealth of Virginia"; "Colonel W. Steven Flaherty, in his individual capacity and official capacity as the Superintendent of Virginia State Police"; "Captain Gary B. Payne, Director, Professional Standards Unit, in his individual capacity"; "First Sergeant James L. Hopkins, in his individual capacity"; and "Trooper Nathan E. Hollandsworth, in his individual capacity."

be granted, I apply the pleading standard refined by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 8. The non-moving party must have alleged facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The following long-held rule still stands: "in evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).[4]

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that, on March 17, 2011,[5] Virginia State Police ("VSP") Trooper Nathan E. Hollandsworth ordered the towing and storage of "the plaintiff's vehicle, which was parked in front of her home . . . in accordance with VA Code § 46.2-889." Plaintiff's home is located at 370 Christian Springs Road in Amherst, Virginia. She states that "[n]o summons was issued," that she "was not informed of the statutory basis for the seizure," that she "was not informed of

---

[4] I add that, although extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x. 395, 396–97 (4th Cir. 2006); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006) (citations omitted).

[5] In 2011, St. Patrick's Day fell on Thursday, March 17.

her right to a post-seizure hearing," and that "Hollandsworth did not attempt to find out if the plaintiff or anyone else was present at her home."

Plaintiff describes Christian Springs Road as beginning "at East Monitor Road . . . as a state maintained paved 25 mph residential street that terminates into a dead-end gravel private residential road. There are no intersecting streets and there are no pavement markings or signage. Vehicular traffic consists only of those residents residing on the street." Plaintiff states that she "parked her vehicle in front of her home at about 2:30 p.m. . . . on the afternoon of March 17, 2011," and "carpooled . . . to a dinner meeting," and that later, "at about 6:16 p.m.," "[c]oncerned neighbors who drove past the scene . . . on their way to dinner . . . telephoned plaintiff," and "informed her that a tow was in progress and asked her to speak to the Trooper."

The neighbor gave her phone over to Trooper Hollandsworth, who spoke with Plaintiff.[6] Plaintiff informed Hollandsworth that "an Amherst County Deputy Sheriff had told her she could park where she was," "that she would be back before 8:00 p.m. EDT," and "that if he proceeded with the tow to make sure a citation was issued so that she could contest the validity of the tow." During this conversation, Hollandsworth informed Plaintiff "that he did not care what the Sheriff had told her." Plaintiff returned to her "home at about 7:50 p.m. EDT and found the vehicle had been towed."[7]

That evening, Plaintiff "telephoned the VSP to inquire how to file a formal complaint." Her "call was returned by Sergeant David Edwards who told her that he could and would file a

---

[6] Non-material omissions in the complaint's recitation of facts – for example, that the neighbor gave her cellular phone over to Trooper Hollandsworth to use to speak to Plaintiff – have been filled in with Plaintiff's statements given at the hearing on the instant motion.

[7] Assuming the truth of Plaintiff's allegations, it appears that Hollandsworth spent about two hours of the evening of St. Patrick's Day at Plaintiff's home, engaged in the process of having Plaintiff's car towed.

-3-

complaint with the Professional Standards Unit on her behalf." "The following morning," however, "plaintiff received a call from defendant Hopkins stating that he would not allow a complaint to be filed since defendant Hollandsworth 'followed the letter of the law.'" Plaintiff asked Hopkins, "[W]hat law that would be[?]" but "failed to get a reply." Plaintiff asked Hopkins "for a copy of the dispatch report (which was followed up with a formal written request under the Virginia Freedom of Information Act § 2.2-3704(F)) and renewed her request for a citation or hearing."

The following afternoon, Plaintiff "recovered her car from Smiley's Towing," which "required cash in the amount of $215." A "[c]opy of the tow authorization form in the tower's possession stated" the following "reason for towing: 'TRAFFIC HAZARD – LEFT SIDE TIRES IN ROADWAY,'" but "[n]o section of the Virginia Code was recited on the tow authorization form."

On March 21, 2011, Plaintiff "filed her own formal complaints against the action of . . . Hollandsworth and Hopkins," and on March 24, 2011, "Hopkins sent plaintiff a copy of the dispatch report along with a bill for $71.15, the purported cost of generating, [copying,] and mailing the two-page computer print-out."

The two-page, $71.15 dispatch report indicates that "Hollandsworth was responding to the complaint of Steve Martin, a local tow truck operator and the owner of Steve's Body Shop." Residing "at 377 Christian Springs Road," Martin is Plaintiff's neighbor. As a tow truck operator, he "is personally known to at least some of the individual capacity defendants."[8]

---

[8] As Plaintiff pointed out at the hearing on the instant motion, Martin's "tow truck business is right across the street from the state police on South Main Street in Amherst." Plaintiff stated that, on a previous occasion, Martin "tried to get the sheriff to tell [her] . . . that not only [her] two cars, but . . . probably four tree trucks . . . were on the road," and he "tried to get the sheriff's department to tow" her, but "the sheriff's department didn't, wouldn't."
(continued...)

On March 31, 2011, Plaintiff "was interviewed . . . by First Sergeant Curtis Moore on behalf of the Professional Standards Unit." At the interview, Plaintiff "informed Moore of her desire for a hearing and her frustration at not receiving a citation." By "letter dated June 28, 2011," "defendant Payne . . . informed plaintiff that his administrative investigations resulting from [her] earlier filed complaints [had] been concluded but that all information [was] protected." By "letter dated July 5, 2011, plaintiff responded to defendant Payne stating, *inter alia*, that she still had not been informed of the statutory basis for the seizure." "Plaintiff sent a letter dated July 12, 2011 to defendant Flaherty, the Superintendant [*sic*] of the VSP, again requesting disclosure of the authority under which her car was towed and renewing her demand for a post-seizure hearing." Thereafter,

> Plaintiff received a letter from the defendant Flaherty, dated July 25, 2011, that (a) stated that she violated Virginia Code Sections 46.2-888 and 46.2-1209, (b) was silent as to her request for a hearing, (c) stated that: "Law enforcement officers have the authority to warn, summons or arrest for most offenses. Trooper Hollandsworth exercised his discretion at the time not to issue you a Virginia Uniform Summons" and (d) contained numerous factual errors.

Plaintiff states that "Hollandsworth did not find that plaintiff violated any moving or non-moving non-criminal parking or traffic offense," but instead "made the determination that plaintiff committed a criminal traffic offense by leaving her vehicle unattended in such a manner

---

<sup>8</sup>(...continued)
Plaintiff added that, although the VSP has provided her with a "dash cam" video of Hollandsworth's appearance that evening on Christian Springs Road, it is only a partial video, which "abruptly ended." She asserted that, although "the state trooper told the dispatcher, she's blocking Steve Martin, one of our tow truck operators' driveway so he can't get his flat top out," the Christian Springs Road address is Martin's "home, not his business," and on the video, one "can see Mr. Martin having no problem pulling out of his driveway," even though "he called it in saying that [she] was blocking his driveway." She added that "the state trooper put the location of [her] car on the other side of the street," [b]ut yet in the dash cam you can see he has no problem coming out of his driveway and passing [her] car." Plaintiff described Hollandsworth's conduct as "collusion. Steve Martin called his buddies at the state police and said, I want this car towed. And they did. And they did it in such a way that I couldn't contest it because they didn't give me a ticket, which they should have."

-5-

to impede traffic and create a hazardous condition." Plaintiff asserts that "[i]ssuance of a citation and court appearance should have been required." Plaintiff maintains that "[n]o probable cause existed," and that

> Hollandsworth did not and could not have reasonably concluded that plaintiff's vehicle, located where it was, on [that] day, [at that] time[, and under the] prevailing conditions, was stopped in such a manner that impeded or rendered dangerous the use of the highway by others or in a manner that created any type of hazardous condition.

By "letter dated July 28, 2011," presumably addressed to Flaherty, Plaintiff "requested a hearing for the final time. She also commented on the factual errors set forth in [Flaherty's] letter of July 25, 2011."

Plaintiff states that, although she "was not informed of her right to a hearing, she immediately and repeatedly requested that a summons be issued, that the statutory basis for the seizure be disclosed, and that a post-seizure hearing be held in order to determine if probable cause existed for the seizure." She asserts that "Defendants have steadfastly refused to provide [any] hearing, let alone a prompt hearing."

Plaintiff claims that "Defendants' decision to tow [her] vehicle was unreasonable, arbitrary, capricious and an abuse of discretion, and was done with collusion and malice," and that

> Hollandsworth, Hopkins, Payne and Flaherty, acting under color of state law, conspired to seize [her] car in such a way that deprived her of the opportunity to challenge the lawfulness of the seizure (first by choosing not to issue a citation and then by denying plaintiff's numerous request[s] for a meaningful post-seizure hearing). The named police officer defendants knew or reasonably should have known that the action taken within this sphere of their official responsibility would violate the constitutional rights of the plaintiff and was done with malicious intentions to cause a deprivation of constitutional rights.

Plaintiff alleges that the "[d]enial of a post-seizure hearing to determine if there was a sufficient

-6-

Case 6:12-cv-00006-NKM-RSB   Document 50   Filed 09/24/12   Page 6 of 16   Pageid#: 256

factual and legal basis for the impounding of [her] vehicle constitutes an unreasonable seizure, fails to afford a speedy and public trial, is a deprivation of due process rights," and violates "the Virginia Constitution (Article 1, Section 11) and the United States Constitution (IV, V and VI Amendments as incorporated into XIV Amendment." Plaintiff maintains that "[n]o constitutionally sufficient statutory provisions have been established that provide[] for notice and the opportunity for a post-seizure hearing at which the vehicle's owner can challenge the removal of the vehicle," and that "[t]he laws of the Commonwealth of Virginia fail to provide adequate opportunity to contest seizure and detention of property and, as such, violate [the] constitutional right to due process." In Plaintiff's view, "[t]he named police officers knew or reasonably should have known that the action taken within this sphere of their official responsibility would violate the constitutional rights of the plaintiff and was done with malicious intentions to cause a deprivation of constitutional rights," and "[t]he officers and employees of [the VSP] have not been provided with the requisite and proper oversight and have not been monitored to ensure the procedures, policies, activities, and laws are being properly implemented and performed in accordance with constitutional requirements."

In addition to "[a]ny further relief which the court may deem appropriate," Plaintiff seeks

> [d]eclarative and injection [*sic*] relief to prevent defendants from directing the towing and storage of any vehicle unless a summons is issued or, absent issuance of summons, that procedures be in place to timely inform the vehicle owner of his or her right to a hearing, and the procedures and time limits for requesting such a hearing; or otherwise enjoining defendants from ongoing constitutional violations.
>
> Declarative judgment that seizure of plaintiff's vehicle was an unreasonable seizure due to defendants['] refusal to provide a post-seizure hearing to determine if probable cause existed for the seizure or, alternatively, conduct a hearing on the merits to determine if there was a sufficient factual and legal basis for the impounding of plaintiff's vehicle.

Award of monies sufficient [to] cover towing and storage costs ($215) as well as court costs, including but not limited to filing costs, cost of service of process, attorney fees (if any) and other reasonable and customary costs incurred during the course of this litigation.

Punitive damages against the individual capacity defendants in the amount of $350,000 for the willful denial of plaintiff's constitutional rights.

### III. DISCUSSION

A federal civil rights claim based on 42 U.S.C. § 1983 must include two essential elements: "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Decker and Polarek

Plaintiff names the following as Defendants: "Marla G. Decker, in her official capacity as the Secretary of Public Safety," and "Janet Polarek, in her official capacity as Secretary of the Commonwealth of Virginia." However, this is the only reference to either of these Defendants in the entire complaint. Plaintiff does not allege that either Decker or Polarek had any personal involvement in the case, or that either of them breached a legal duty owed to Plaintiff. Upon consideration of a Rule 12(b)(6) motion, I must assume the truth of "all well-pleaded, nonconclusory factual allegations," *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011), but I "need not assume the veracity of 'bare legal conclusions,'" *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (quoting *Aziz*, 658 F.3d at 391). The conclusory allegations against Decker and Polarek simply fail to articulate any factual or legal basis to support a § 1983 claim against either of them.

To the extent Plaintiff's response in opposition to the motion to dismiss can be liberally

construed to suggest that Decker and Polarek are susceptible to her claims seeking injunctive relief, the claim also fails.[9] *Ex parte Young*, 209 U.S. 123, 159-60 (1908), created an exception to the general principle of sovereign immunity, permitting a plaintiff to sue an officer of a state agency in the officer's official capacity for prospective injunctive relief to prevent a continuing violation of federal law.[10] *See also Green v. Mansour*, 474 U.S. 64, 68 (1985). However, the *Ex parte Young* exception is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act." *Ex parte Young*, 209 U.S. at 155–56 (emphasis added). Thus, there must be a "'special relation' between

---

[9] Such a liberal construction underscores that the relationship between Decker and Polarek and the enforcement of laws that Plaintiff seeks to enjoin is "significantly attenuated." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 33-33 (4th Cir. 2008) (discussing the contours of the "special relation" doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908)); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-02 (4th Cir. 2010) (same). Plaintiff's response in opposition maintained that the complaint states a claim against Decker and Polarek because "Decker and Polarek are both members of the Governor's Cabinet," and elaborated that

> Ms. Decker, in her role as Secretary of Public Safety, oversees twelve state agencies, including the VSP. It is her role as the Secretary of Public Safety she directs the development of goals, objectives, policies and plans for her assigned agencies and is responsible for holding her assigned agency heads accountable for their actions. The complaint alleges that the officers and employees of Virginia State Police have not been provided with the requisite and proper oversight and have not been monitored to ensure the procedures, policies, activities, and laws are being properly implemented and performed in accordance with constitutional requirements.
>
> Defendant Polarek is the Secretary of the Commonwealth of Virginia and a member of the Governor's Cabinet, serves under the supervision and at the direction of the Governor and is a duly authorized officer of the Commonwealth. The complaint alleges that no constitutionally sufficient statutory provisions have been established that provides for notice and the opportunity for a post-seizure hearing at which the vehicle's owner can challenge the removal of the vehicle and further that the laws of the Commonwealth of Virginia fail to provide adequate opportunity to contest seizure and detention of property and, as such, violate constitutional right to due process. Indeed, defendants have admitted that Virginia law does not require the VSP to issue a summons or provide a hearing to a traffic violator. Plaintiff submits that misuses of power would be substantially reduced or eliminated if the Commonwealth had constitutionally adequate law, policy and procedures in place.

(Citations to the complaint and the motion to dismiss omitted; otherwise quoted verbatim.)

[10] Injunctive relief is not available against the Defendants who have been sued in their individual capacities.

the officer being sued and the challenged statute before invoking the exception." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157). "This requirement of '*proximity to* and *responsibility for* the challenged state action,'" *id*. (quoting *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)), "is not met when an official merely possesses '[g]eneral authority to enforce the laws of the state,'" *id*. (quoting *S.C. Wildlife Fed'n*, 549 F.3d at 331 (citation omitted)).

In *McBurney*, the plaintiffs alleged that Virginia's Freedom of Information Act ("VFOIA") violated the dormant commerce clause and the Privileges and Immunity Clause of the U.S. Constitution. *Id*. at 396. Among other defendants, the plaintiffs sued the Attorney General of Virginia, arguing that he had the specific authority to enforce the VFOIA against state officials. *Id*. at 399-400. The United States Court of Appeals for the Fourth Circuit held that the general duty of the Attorney General to enforce the laws of the Commonwealth of Virginia did not establish a "special relation" to the VFOIA for *Ex parte Young* purposes. *Id*. at 401.

Neither Decker nor Polarek have any "special relation" to any laws under color of which another Defendant may have acted. Decker, as the Secretary of Public Safety, oversees 12 different state agencies that are charged with a variety of responsibilities, including the following: the enforcement of alcoholic beverage laws; the protection of the public through the confinement, treatment, and re-entry preparation of criminal offenders; training firefighters and other first responders, as well as members of the Army and Air National Guard; and planning and coordinating the state's emergency preparedness, response, recovery, and mitigation efforts. *See* http://www.publicsafety.virginia.gov/about.cfm. The mere fact that her various duties include general oversight of the VSP does not establish a "special relation" for purposes of *Ex*

*Parte Young*.

Polarek's connection to the enforcement of laws under color of which another Defendant may have acted is even more remote. As Secretary of the Commonwealth, Polarek and her office assist the Governor in the appointments of individuals to serve on Virginia's boards and commissions, and they manage the following: extraditions; clemency petitions; pardons; service of process; the restoration of voting rights; the authentication of foreign adoption documents; the certification of notary publics; lobbyist registration; and disclosures and conflict of interest filings. *See* http://www.commonwealth.virginia.gov. Polarek has no responsibility or authority to enforce any law under color of which another Defendant may have acted, so *Ex Parte Young* does not apply to claims against her.

Finally, even if I "were to find a special relation," I "cannot apply *Ex parte Young* because" there are no allegations that Decker or Polarek have "acted or threatened to act." *McBurney*, 616 F.3d at 402 (citing *Ex parte Young*, 209 U.S. at 155-56; *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001)). As I have already pointed out, the allegations, even as supplemented in Plaintiff's response in opposition to the motion to dismiss, indicate only that Decker and Polarek hold their respective offices. Neither Decker nor Polarek are alleged to have been involved in any way with the conduct of which Plaintiff complains. The allegations do not suggest that any of the other Defendants have relied on the advice of Decker or Polarek. Because neither Decker nor Polarek have "enforced, threatened to enforce, or advised other agencies to enforce" any law against Plaintiff, "the *Ex parte Young* fiction cannot apply." *McBurney*, 616 F.3d at 402 (quoting *Ex parte Young*, 209 U.S. at 155-56).

### B. Flaherty

Plaintiff names as a Defendant "Colonel W. Steven Flaherty, in his individual capacity

and official capacity as the Superintendent of Virginia State Police." However, the sole basis for Plaintiff's claim against Flaherty is a letter in which he informed Plaintiff that Trooper Hollandsworth's actions were consistent with the law of the Commonwealth. As I have already observed, I assume the truth of "all well-pleaded, nonconclusory factual allegations," *Aziz*, 658 F.3d at 391, but I "need not assume the veracity of 'bare legal conclusions,'" *Burnette*, 687 F.3d at 180 (quoting *Aziz*, 658 F.3d at 391). As with Decker and Polarek, the conclusory allegations against Flaherty fail to articulate any factual or legal basis to support a § 1983 claim.

### C.  The Remaining Defendants

I turn now to Plaintiff's claims against the remaining Defendants, named as follows: "Captain Gary B. Payne, Director, Professional Standards Unit, in his individual capacity"; "First Sergeant James L. Hopkins, in his individual capacity"; and "Trooper Nathan E. Hollandsworth, in his individual capacity."

### 1.  Virginia Tort Claims Act

The Fourteenth Amendment provides that, "no state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XVI § 1. Where a deprivation of property results from an established state procedure, due process requires the state to provide a pre-deprivation hearing, *see Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982); however, in certain circumstances, the availability of meaningful post-deprivation procedures satisfies the requirements of due process, such as here, where it is impractical to provide a meaningful hearing prior to an alleged deprivation, *see Parratt v. Taylor*, 451 U.S. 527, 538 (1981) (due process satisfied by post-deprivation remedies when a deprivation is caused by the

random, unauthorized acts of a state employee).[11] The rule in *Parratt* applies with equal force to intentional as well as negligent deprivations by state employees. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (due process satisfied by post-deprivation remedy to redress intentional destruction of personal property by prison guard during a "shakedown").

Virginia has provided adequate post-deprivation remedies for deprivations caused by state employees. Under the Virginia Tort Claims Act (the "VTCA"), Va. Code § 8.01–195.3, Virginia has waived sovereign immunity for damages for "negligent of wrongful" acts of state employees acting within the scope of employment. The Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985). Plaintiff does not deny

---

[11] To establish a violation of procedural due process, Plaintiff must show that (1) she had a property interest (2) of which a Defendant deprived her, (3) without due process of law. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005) (citing *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 826 (4th Cir. 1995)). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In order to determine whether an individual has received fair notice, a court "must examine the relevant facts of each case." *United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 224 (4th Cir. 1997). Beyond the minimum requirements of notice and an opportunity to be heard, due process is "flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). As further explained above, Plaintiff was not deprived of procedural due process, as she could have resorted to the adequate post-deprivation remedies offered by the state under the Virginia Tort Claims Act.
     As for substantive due process, the government runs afoul of that only when its actions shock the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–47 (1998); *Young v. City of Mount Ranier*, 238 F.3d 567, 574 (4th Cir. 2001). In other words, the protections of substantive due process extend only to "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any predeprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir.1991). To shock the conscience, "the conduct must be 'intended to injure in some way unjustifiable by any government interest.'" *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999) (en banc) (quoting *Lewis*, 523 U.S. at 849).
     I cannot conclude that Defendants' conduct violated Plaintiff's substantive due process rights. First, Plaintiff had post-deprivation procedures available to remedy the towing of her vehicle. Accordingly, the actions were not "literally incapable of . . . adequate rectification by any post-deprivation state remedies." *Rucker*, 946 F.2d at 281. Moreover, the towing of her car was simply not so unjust that no amount of fair procedure could rectify it.

that she could have pursued her claims in state court.[12] Thus, Plaintiff cannot allege that she has been denied post-deprivation procedures to redress the loss of her property, and she has not stated a constitutional claim. The availability of a tort action in state court fully satisfies the requirement of meaningful post-deprivation process, and Plaintiff cannot state a claim for the loss of her property under the Fourteenth Amendment.[13] "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law," *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), and Plaintiff's allegations do not state a constitutional claim, *see* Va. Code § 8.01–195.3 (describing the VTCA).

### 2. Conspiracy

In a conspiracy claim under § 1983, there must a showing that the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in a plaintiff being deprived of a constitutional right. *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992). Where a plaintiff alleges unlawful intent in a conspiracy claim under § 1983, she must plead specific facts in a nonconclusory fashion to survive a motion to dismiss. *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (citing *Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992)).

Plaintiff's conspiracy claim consists of a single allegation in the Complaint:

Defendants Hollandsworth, Hopkins, Payne and Flaherty, acting under color of state law, conspired to seize plaintiff's car in such a way that deprived her of the

---

[12] At the hearing on the instant motion, when I suggested to Plaintiff that she could have pursued state court remedies, Plaintiff replied, "I chose here because I strongly believe based on the circumstances Steve Martin knows all the state police."

[13] Additionally, a state's failure to abide by its own procedural laws is not a federal due process issue. *See Riccio v. Cnty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990).

-14-

opportunity to challenge the lawfulness of the seizure (first by choosing not to issue a citation and then by denying plaintiff's numerous requests for a meaningful post-seizure hearing).

Plaintiff fails to allege any facts to state a plausible claim for conspiracy. The complaint does not allege how or when this conspiracy occurred, nor does it contain any facts to support the conclusory assertion that these Defendants conspired to violate Plaintiff's rights. Even liberally construing her conclusory allegations, the facts do not state a claim for conspiracy. Plaintiff has no constitutional right that was violated by Hollandsworth's choice "not to issue a citation." And, as discussed in the preceding section, Plaintiff was not denied a "meaningful post-seizure hearing," given that she could have pursued her claim in state court.

## IV. INJUNCTIVE RELIEF

Plaintiff's claim for injunctive relief fails as a matter of law. First, Plaintiff seeks injunctive relief on behalf of the public at large, and Plaintiff does not have standing to assert such a claim. Second, Plaintiff's claim for injunctive relief fails because the complaint does not seek prospective relief for an ongoing violation.

### A. Standing

A plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiff asks for the following injunctive relief:

Declaratory and injection [*sic*] relief to prevent defendants from directing the towing and storage of *any vehicle* unless a summons is issued or, absent issuance of a summons, that procedures be in place to timely inform the vehicle owner of

-15-

his or her right to a hearing, and the procedures and time limits for requesting such a hearing; or otherwise enjoining defendants from ongoing constitutional violations.

(Emphasis added.)

However, Plaintiff has no legal right to seek relief on behalf of third parties, and thus she has no standing to seek an injunction to prohibit the towing of "any vehicle."

### B. Prospective Relief

Plaintiff fails to state a claim against any of the Defendants for injunctive relief because she does not seek prospective relief and fails to allege an ongoing violation. Federal injunctive relief is an extreme remedy, *see Simmons*, *supra*, 47 F.3d at 1382, and such relief is unavailable where there is no showing of any real or immediate threat that the plaintiff will be wronged again, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983). Plaintiff does not allege an ongoing violation of federal law. The incident giving rise to her complaint occurred in March 2011 and, according to the complaint, Plaintiff's last contact with any of the Defendants was in July 2011. Plaintiff does not allege any ongoing violation, nor does she allege that there is a real or immediate threat that she will be towed again.

### V. CONCLUSION

For the stated reasons, the motion to dismiss will be granted. An appropriate order will accompany this memorandum opinion.

Entered this ___24th___ day of September, 2012.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

-16-

Case 6:12-cv-00006-NKM-RSB   Document 50   Filed 09/24/12   Page 16 of 16   Pageid#: 266